CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shonna Counter,**<br><br>            Plaintiff,<br><br>      v.<br><br>**La Cienega-Sawyer LTD**, a California Limited Partnership; **Fitness International, LLC**, a California Limited Liability Company;  and Does 1-10,<br><br>            Defendants. | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Shonna Counter complains of Defendant La Cienega-Sawyer LTD, a California Limited Partnership; Fitness International, LLC, a California Limited Liability Company; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1.  Plaintiff is a California resident with physical disabilities. She suffers from spinal muscular atrophy. She uses both a walker and wheelchair for mobility.

1

Complaint

2.   Defendant La Cienega-Sawyer LTD owned the real property located at or about 1833 S. La Cienega Blvd., Los Angeles, California, in December 2017.

3.   Defendant La Cienega-Sawyer LTD owns the real property located at or about 1833 S. La Cienega Blvd., Los Angeles, California, currently.

4.   Defendant Fitness International, LLC owned the LA Fitness located at or about 1833 S. La Cienega Blvd., Los Angeles, California, in December 2017.

5.   Defendant Fitness International, LLC owns the LA Fitness located at or about 1833 S. La Cienega Blvd., Los Angeles, California, currently.

6.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights

Complaint

Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff is a member of LA Fitness.

11. Plaintiff has been going to the LA Fitness an average of three times a week since December 2017.

12. Plaintiff was most recently at LA Fitness in August 2018.

13. Plaintiff plans to visit LA Fitness on a regular basis.

14. Swimming pools are one of the facilities, privileges, and advantages offered by Defendants to patrons of LA Fitness.

15. Unfortunately, LA Fitness did not provide a pool lift that allowed for unassisted entry, operation or exit into and out of the pool during plaintiff's visits.

16. Currently, there is no pool lift for use by persons with disabilities.

17. Hot tubs are one of the facilities, privileges, and advantages offered by Defendants to patrons of LA Fitness.

18. Unfortunately, LA Fitness did not provide a hot tub lift that allowed for unassisted operation during plaintiff's visits.

19. Currently, there is no hot tub lift that allows for unassisted operation.

20. As a result, plaintiff hired a personal assistant to accompany her during her workouts so that she could use the facilities during her visits.

21. Entrance into the sauna room of LA Fitness is one of the facilities, privileges, and advantages offered by Defendants to patrons of the business.

22. The sauna door required greater than 5 lbs of pressure to open. In fact, the sauna door requires 20 lbs of pressure to open.

3

23. As a result of the heavy sauna door, plaintiff's wheelchair has sustained damage to it.

24. Currently, the sauna door requires greater than 5 lbs of pressure to open.

25. The towel hook in the shower room was mounted at a height greater than 54 inches and was not effectively useable by wheelchair users.

26. The plumbing underneath the sinks in the restroom areas were not wrapped to protect against burning contact.

27. Currently, the shower hook is mounted at a height that is not effectively useable by wheelchair users.

28. Currently, the plumbing underneath the sinks is not wrapped to protect against burning contact.

29. Plaintiff personally encountered these barriers.

30. This inaccessible facility denied the plaintiff full and equal access and caused her difficulty, discomfort, and embarrassment.

31. Plaintiff plans to return and patronize LA Fitness. In fact, even though there are barriers at the LA Fitness, plaintiff continues to visit this facility on a regular basis.

32. When the barriers are removed, plaintiff plans to continue visiting the facility on a regular basis.

33. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

34. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

Complaint

35. Given the obvious and blatant nature of the violations and barriers alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, she can sue to have all barriers that relate to her disability removed regardless of whether she personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

36. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

37. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

      a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

38. In 2010, the DOJ adopted the 2010 Standards for Accessible Design. It requires pools to have an accessible means of entry and exit for persons with disabilities. The 2010 Standards establish two categories of pools: large pools with more than 300 linear feet of pool wall and smaller pools with less than 300 linear feet of wall. Large pools must have two accessible means of entry, with at least one being a pool lift or sloped entry; smaller pools are only required to have one accessible means of entry, provided that it is either a pool lift or a sloped entry. See 2010 ADA Standards § 242 and 1009.

39. Because these pools predated the adoption of the 2010 Standards, the defendants were required to modify the pools to provide the accessible means of entry and exit to the extent that it was readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). For an existing pool, removing barriers may involve installation of a fixed pool lift with independent operation by the user or other accessible means of entry that complies with the 2010 Standards. If installation of a fixed lift is not readily achievable, the public accommodation may then consider alternatives such as use of a portable pool lift that complies

Complaint

with the 2010 Standards.

40. In the present case, the defendants have failed to provide any accessible means of entry and exit at its pool. There is no excuse for this. Although the Department of Justice adopted the 2010 Stands in 2010, the compliance date was not until March 15, 2012 to provide business and operators such as the defendants time to comply. That due date was extended to May 21, 2012 to provide additional time for pool owners. That extended date was again extended to September 17, 2012 and, finally, to January 31, 2013 to ensure maximum fairness with respect to compliance. There is no further excuse.

41. Here, the defendants failed to provide an accessible pool and, therefore, failed to provide full and equal access to wheelchair users such as the plaintiff.

42. Under the ADA, if platform lifts are used then they must facilitate unassisted entry, operation, and exit from the lift. 1991 Standards § 4.11.3; 2010 Standards § 410.1.

43. Here, the lift required assistance to operate.

44. The maximum force required to push or pull open a hinged, exterior door cannot exceed 5lbs of force. If it is a required fire door, the maximum force cannot exceed 15 lbs of force. (CBC § 1133B.2.5.)

45. Here, the failure of the defendants to maintain or provide accessible exterior doors is a violation of the law.

46. The maximum height that a useable object can be mounted, assuming that a side approach is possible, is 54 inches. 1991 Standards § 4.2.6. Under the 2010 Standards, the maximum height is 48 inches. 2010 Standards § 308.3.

47. Here, the shower hook is mounted beyond the maximum height requirements in violation of the law.

48. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4;

Complaint

2010 Standards §606.5.

49. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

50. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

51. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

52. Given its location and options, plaintiff will continue to desire to patronize LA Fitness but she has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

53. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code §51(b).

54. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).

55. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities,

Complaint

privileges, or services offered.

56. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each occasion a violation occurred.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: August 24, 2018          CENTER FOR DISABILITY ACCESS

By: _____

_____
Chris Carson, Esq.
Attorney for plaintiff

9

Complaint